IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| TATE RYAN GRESHAM, | § | |
| PLAINTIFF, | § | |
| | § | |
| V. | § | CAUSE NO. A-14-CV-739-LY |
| | § | |
| VINCENT FISCHER AND | § | |
| HOWARD E. WILLIAMS, | § | |
| DEFENDANTS. | § | |

### MEMORANDUM OPINION AND ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Before the court are Defendants' Motion for Summary Judgment filed March 27, 2015 (Doc. #21); Plaintiff's Response to Defendants' Motion for Summary Judgment filed April 10, 2015 (Doc. #24); Defendants' Reply Brief in Support of Motion for Summary Judgment filed April 21, 2015 (Doc. #27); and Defendants' Supplement to Reply Brief in Support of Motion for Summary Judgment filed May 13, 2015 (Doc. #28). After considering the summary-judgment motion, response, replies, and applicable law, along with the summary-judgment evidence presented to the court, the court renders the following memorandum opinion and order.

### *Factual Background*

The following summary of the facts in this case are taken primarily from the nonmovant's pleadings. On August 25, 2012, Plaintiff Tate Ryan Gresham ("Gresham") was attending a party in Unit 3811 of the Aspen Heights Apartments ("Aspen Heights") in San Marcos, Texas. Gresham was in town from Austin for the weekend. That same evening Defendant Officer Vincent Fischer ("Fischer") and another officer, who were on patrol for the City of San Marcos Police Department, responded to a loud-party call involving a different area of Aspen Heights. Sometime after 1:00 a.m., the officers heard and saw a very large gathering of people in and around Units 3811 and 3812. In

response, the officers approached the gathering in order to disperse attendees and issue citations as needed.

Gresham, who was 20-years-old at the time, was consuming alcohol at the party. By his own admission, Gresham consumed about four beers that same afternoon at the Aspen Heights pool and about four more over a two-hour period at the party in Unit 3811. Gresham was in the living room of Unit 3811 near the back door. Fischer approached the open rear door of Unit 3811 to disburse the party and identify the residents. After speaking with the residents, who gave Fischer permission to enter Unit 3811, Fischer walked into the apartment through the back door.

Fischer stopped just inside the doorway, began clearing partygoers, and overheard Gresham say, "fucking pussy cops." Fischer pointed at Gresham and told him to come to Fischer. When Gresham approached him, Fischer took Gresham's arm and walked out the back door of the apartment and onto a grassy area. As Fischer reached for his handcuffs, Gresham broke away from Fischer's grasp and began to run. Fischer yelled pursued Gresham and out to him to stop. Gresham did not stop but continued running across a nearby parking lot and into a second parking lot, at which time Fischer shot Gresham in the back with a Taser gun. Gresham fell and struck his head on the cement. Fischer briefly used the Taser on Gresham a second time as Gresham continued to resist as the other officer handcuffed Gresham.

As a result of his fall, Gresham suffered a bloody nose, "road rash" on his chest, scrapes and bruises on his knees, and cuts on his feet. Gresham also chipped a tooth, which subsequently required a root canal. Emergency Medical Services was called to examine and treat Gresham, after which he declined transport. Fischer transported Gresham to the Hays County Jail for booking. Gresham was remorseful throughout the ride and apologized to Fischer for running.

Gresham was charged with public intoxication and evading arrest. On July 30, 2013, the State of Texas dismissed the public-intoxication charge for insufficient evidence. On December 9, 2013, Gresham was found not guilty of evading arrest by the Hays County Court at Law.

Gresham claims that Fischer wrongfully entered the apartment, attempted to arrest Gresham without probable cause, and used excessive force against Gresham. Gresham also claims that former City of San Marcos Police Chief Howard E. Williams failed to properly train Fischer with respect to use of force and probable cause to arrest. Defendants deny any violation of Gresham's rights and move for summary judgment based on qualified immunity.

### *Summary-Judgment Standard*

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986). The standard for determining whether to grant summary judgment "is not merely whether there is a sufficient factual dispute to permit the case to go forward, but whether a rational trier of fact could find for the nonmoving party based upon the record evidence before the court." *James v. Sadler,* 909 F.2d 834, 837 (5th Cir. 1990) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 576 (1986)).

"If the moving party meets the initial burden of showing there is no genuine issue of material fact, the burden shifts to the nonmoving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial." *Allen v. Rapides Parish Sch. Bd.,* 204 F.3d 619, 621 (5th Cir. 2000) (internal quotations and citations omitted). Conclusory allegations are not competent summary-judgment proof and thus are insufficient to defeat a motion for summary judgment. *See*

3

*Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996). Unsubstantiated assertions, improbable inferences, and unsupported speculation are also not competent summary-judgment proof. *See Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994). The nonmovant must go beyond the pleadings and identify specific proof in the record and articulate the precise manner in which that proof supports his claim. *See Wheeler v. B.L. Dev. Corp.*, 415 F.3d 399, 401–02 (5th Cir. 2005) (citing *Celotex Corp.*, 477 U.S. at 324)); *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the summary-judgment motion. *Ragas*, 136 F.3d at 458. Doubts will be resolved in favor of the nonmovant, and all justifiable inferences to be drawn from the underlying facts are viewed in the light most favorable to that party. *See Minter v. Great Am. Ins. Co.*, 423 F.3d 460, 465 (5th Cir. 2005); *Burch v. City of Nacogdoches,* 174 F.3d 615, 619 (5th Cir. 1999).

## *Analysis*

### *Qualified Immunity*

Section 1983 provides, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983 (2012). By its terms, the statute creates no substantive rights; it merely provides remedies for deprivations of rights established elsewhere. *See Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985).

4

"Qualified immunity protects public officials from suit unless their conduct violates a clearly established constitutional right." *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008) (internal quotation marks omitted). The plaintiff bears the burden of negating a properly raised qualified-immunity defense. *Id.* Whether a defendant is entitled to maintain qualified immunity from a plaintiff's Section 1983 claim is dependent upon whether (1) the plaintiff has alleged a violation of a clearly established constitutional right; and (2) whether the behavior of the state actor was objectively reasonable under the circumstances. *See King v. Chide*, 974 F.2d 653, 657 (5th Cir. 1992). When the court has a clear picture of what occurred during an incident giving rise to the qualified-immunity defense, the reasonableness question becomes one of law. *See Lampkin v. City of Nacodoches*, 7 F.3d 430, 434–35 (5th Cir. 1993) (acknowledging that generally court determines qualified immunity). A defendant is entitled to qualified immunity for actions arising from the performance of discretionary functions so long as the conduct does not violate clearly-established statutory or constitutional rights apparent to a reasonable person. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Williams v. Kaufman County*, 352 F.3d 994, 1002 (5th Cir. 2003). First, the court must determine whether the plaintiff's allegations have stated a violation of a constitutional right. *Id.* (citing *Hope v. Pelzer*, 536 U.S. 730, 736 (2002)). Second, if a constitutional violation alleged is found to have occurred, the court must then determine whether the defendant's actions violated "clearly established statutory or constitutional rights of which a reasonable person would have known." *Hope*, 536 U.S. at 739. The standard "gives ample room for mistaken judgment by protecting all but the plainly incompetent of those who knowingly violate the law." *Brumfield*, 551 F.3d at 326 (internal quotation marks omitted).

### *Waiver of Immunity*

Gresham contends Defendants are not entitled to qualified immunity because the case was removed from state court. Gresham relies on *Lapides v. Board of Regents of University System of Georgia*, 535 U.S. 613 (2002), in which the United State Supreme Court held that a state waives its Eleventh Amendment sovereign immunity when it voluntarily joins in the removal of a case. *Id.* at 624. Gresham argues that the qualified immunity asserted by Defendants "is no different than the sovereign immunity enjoyed by the states and ratified by the Eleventh Amendment." Although Gresham equates the sovereign immunity of a state with the qualified immunity of a public official to an action under Section 1983, nothing in the *Lapides* decision suggests removal waives an individual's qualified-immunity defense. Indeed, the district court in *Lapides* granted qualified immunity to the individual defendants despite their participation in the removal and simultaneously found the State of Georgia had waived its Eleventh Amendment immunity by participating in the removal. *Id.* at 616–7.

Moreover, Gresham cites no case holding that *Lapides* prevents individual defendants from asserting qualified immunity when they remove a case to federal court. The court therefore rejects Gresham's argument and finds that Defendants have properly invoked their qualified-immunity defense.

### *Officer Vincent Fischer*

Gresham asserts three claims against Fischer in his individual capacity: (1) unlawful entry; (2) unlawful detention; and (3) excessive force.

*Unlawful Entry*

Gresham contends that Fischer unlawfully entered the back door of Unit 3811 where Gresham was attending a party in violation of Gresham's Fourth Amendment right to be free from unlawful search and seizure. The Fourth Amendment generally prohibits the warrantless entry of a person's home. *Illinois v. Rodriguez*, 497 U.S. 177, 181(1990) (citing *Payton v. New York*, 445 U.S. 573 (1980); *Johnson v. United States,* 333 U.S. 10 (1948)). However, the prohibition does not apply to situations in which voluntary consent has been obtained from the individual whose property is searched. *Id.* (citing *Schneckloth v. Bustamonte,* 412 U.S. 218 (1973)). Fischer testified before the Hays County Court at Law at Gresham's trial on the charge of evading arrest that, before to entering the open back door of Unit 3811, Fischer spoke with the residents and received consent to enter. Gresham did not dispute Fischer's testimony at trial, nor does he in response to the pending motion for summary judgment before this court. Therefore, the court concludes that Fischer's entry through the back door of Unit 3811 did not violate Gresham's Fourth Amendment right. Gresham has failed to meet his burden in response to Fischer's assertion of qualified immunity on the unlawful-entry claim.

*Unlawful Detention*

Gresham contends that he was not committing a crime when Fischer illegally seized him and pulled him out of the apartment. A brief detention is justified if the officer need has reasonable suspicion that criminal activity is at hand. *See United States v. Sokolow*, 490 U.S. 1, 7–8 (1989). Further, the officer can use some degree of physical force to effect an investigatory detention, including restraining the suspect with handcuffs, without converting a detention into an arrest. *See*

*United States v. Jordan*, 232 F.3d 447, 450 (5th Cir. 2000). The court concludes that based on his observations and Gresham's derogatory comment Fischer did have reasonable suspicion to believe that Gresham was underage and intoxicated in violation of Texas law. Given this reasonable suspicion, Fischer was justified in attempting to briefly detain Gresham to question him.

After Gresham approached him, Fischer used very limited physical contact to escort Gresham out of the apartment for further investigation. The court concludes that this limited contact did not violate Gresham's right to be free from unconstitutional seizure. Moreover, Gresham failed to cooperate with the detention. When Fischer reached for his handcuffs, Gresham fled. At that point, Fischer had probable cause to believe Gresham was evading arrest or detention. *See Flores v. City of Palacios*, 381 F.3d 391, 402 (5th Cir. 2004). Therefore, the court concludes that Gresham has failed to create any fact issue concerning whether Fischer's detention or subsequent arrest for evading arrest was lawful, or whether Fischer's actions were objectively reasonable in light of clearly established law at the time of the incident. Fischer is entitled to qualified immunity on Gresham's unlawful-detention claim.

*Excessive Force*

Gresham next contends that Fischer used excessive force when he used his Taser gun to stop Gresham from fleeing. It is clearly established law in this circuit that in order to state a claim for excessive force in violation of the Constitution, a plaintiff must allege "(1) an injury, which (2) resulted directly and only from the use of force that was clearly excessive to the need; and the excessiveness of which was (3) objectively unreasonable." *Spann v. Rainey*, 987 F.2d 1110, 1115 (5th Cir.1993) (internal quotations omitted). In gauging the objective reasonableness of the force

used by a law-enforcement officer, the court must balance the amount of force used against the need for that force. *Id.*

The amount of force that is constitutionally permissible must be judged by the context in which that force is deployed. In the Fourth Amendment context, a certain amount of force is obviously reasonable when a police officer arrests a dangerous, fleeing suspect. *See Tennessee v. Garner*, 471 U.S. 1, 3 (1985).

The parties do not dispute that Gresham's injuries resulting from Fischer's actions satisfy the first element of Gresham's excessive-force claim. Thus, the court turns to the second and third elements–whether the injuries resulted from the use of force that was clearly excessive and whether that force was objectively unreasonable. *See Graham*, 490 U.S. at 396. The relevant immunity issue is whether "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 204 (2001). In any Section 1983 case alleging a police officer's use of excessive, the objective reasonableness of the force used is a separate question from the immunity question–whether no reasonable officer could have believed that he was using excessive force. *See Colston v. Barnhart*, 130 F.3d 96, 99 (5th Cir. 1997). In reviewing the summary-judgment evidence, the court must consider the materiality, not the genuineness, of fact issues pertinent to immunity. *See Johnson v. Jones*, 515 U.S. 304, 313 (1995). The issue is whether a "reasonable" police officer confronted with the same circumstances would have used his Taser gun to stop Gresham from fleeing.

The court must make "allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the

9

amount of force that is necessary in a particular situation." *Graham,* 490 U.S. at 396–97. When Gresham ran away from Fisher and did not stop when Fischer ordered him, Fischer reasonably interpreted Gresham's actions as an active attempt to evade arrest by flight. Fischer was entitled to use force to prevent Gresham's escape and effect an arrest for evading arrest. *See McKenney v. Harrison,* 635 F.3d 354, 360 (8th Cir. 2011). The court finds the same reasoning applies to Fischer's use of the Taser gun on Gresham a second time. The summary-judgment evidence shows that Gresham continued to resist detention as the second officer handcuffed Gresham after he fell. Thus, Fisher was entitled to briefly use the Taser gun on Gresham a second time to prevent a second attempt to flee.

Although the Fifth Circuit has not directly addressed whether the use of a Taser gun on a suspect who flees from the scene of a nonviolent misdemeanor constitutes excessive force, the court concludes that Fischer is entitled to qualified immunity against Gresham's excessive-force claim because Gresham has failed to demonstrate that Fischer's behavior was objectively unreasonable in light of clearly established law, even if Fischer did use excessive force.

### *Chief Howard Williams*

Gresham sues Defendant Howard Williams ("Williams"), former Chief of Police of San Marcos, in his individual capacity for Williams's alleged failure to train his officers not to violate a person's right of association and not to unlawfully detain a person with the use of excessive force. For a police chief to be held liable under Section 1983, there must be some connection between the chief's actions and the alleged constitutional violation. *See Baker v. Putnal,* 75 F.3d 190, 199 (5th Cir. 1996). The plaintiff must show "(1) the police chief failed to supervise or train the officer, (2) a causal connection existed between the failure to supervise or train and the violation of the plaintiff's

rights, and (3) such failure to supervise or train amounted to gross negligence or deliberate indifference." *Id.* To prevail on a "failure to train" theory, a plaintiff must demonstrate (1) the municipality's training procedures were inadequate, (2) the municipality was deliberately indifferent in adopting its training policy, and (3) the inadequate training policy directly caused the violations in question. *See World Wide Street Preachers Fellowship v. Town of Columbia*, 591 F.3d 747, 756 (5th Cir. 2009). Liability can be found for an inadequate training claim only if the plaintiff alleges with specificity how a particular training program is defective. *See Roberts v. City of Shreveport*, 397 F.3d 287, 293 (5th Cir. 2000).

Gresham first claims that Williams failed to train his officers not to violate a person's First Amendment right of association. However, Gresham fails to provide evidence of how Williams trained or failed to train his officers on this First Amendment right. Neither does Gresham provide any authority to prove a constitutional violation occurs when officers enter an open door to disperse a disruptive partygoers.

Next, Gresham asserts that Williams failed to train his officers to know it is a constitutional violation to detain and subsequently arrest a person for commission of a Class C misdemeanor because that person could not be incarcerated if convicted. Gresham again provides no evidence of how Williams trained or failed to train his officers on this issue. Even if Williams had trained his officers in the way alleged, no constitutional violation occurs when an officer arrests a person for an offense that cannot result in jail time. *See Atwater v. City of Lago Vista*, 532 U.S. 318, 354–55 (2001). Therefore, the court find that there can be no causal connection between any supposed failure to train by Williams and a constitutional violation committed by Fischer.

Finally, Gresham claims that Williams failed to train his officers not use excessive force by using a Taser gun when a Class C misdemeanor is allegedly being committed. Once again, Gresham offers no evidence on the training Williams gave his officers, whether that training included instruction on when to use force and when to use a Taser gun, and what level of force an officer may use. Further, Gresham offers no evidence or case law to support his claim that a training policy that grants officers the discretion to use non-lethal force to stop a fleeing detainee will lead to the "highly predictable consequence" of recurring constitutional-rights violations. *Burge v. St. Tammany Parish*, 336 F.3d F.3d 363, 373 (5th Cir. 2003). Therefore, the court finds that Gresham has filed to satisfy his burden as to any element of his failure-to-train claims against Williams in his individual capacity.

### *Official-Capacity Claims*

Gresham also sues Defendants in their official capacities. An official-capacity suit is aimed against the employing governmental entity, not the individual officer. *See Hafer v. Melo*, 502 U.S. 21, 25 (1991). "Because the real party in interest in an official-capacity suit is the governmental entity and not the named official, 'the entity's policy or custom must have played a party in the violation of federal law.'" *Id.* (quoting *Kentucky v. Graham*, 473 U.S. 159, 166 (1985)) (internal quotation marks omitted). To establish a municipality's liability under Section 1983, a plaintiff must show the municipality had an inadequate custom or policy in place that acted as the moving force behind a constitutional violation. *See Forgan v. Howard County, Texas*, 494 F.3d 518, 522 (5th Cir. 2007) (citing *Monell v. NY. C. Dep't of Soc. Servs.*, 436 U.S. 658, 690–91(1978)). For the same reasons already discussed, the court finds that Gresham fails to present evidence of any policy of the City of San Marcos, or its police department, that was the moving force behind any constitutional violation.

Therefore, Defendants are entitled to summary judgment on the claims against them in their official capacities.

## Conclusion

**IT IS THEREFORE ORDERED** that Defendants' Motion for Summary Judgment filed March 27, 2015 (Doc. #21) is **GRANTED**.

SIGNED this _1st_ day of July 2015.

_____
LEE YEAKEL
UNITED STATES DISTRICT JUDGE